# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GIRTHA MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 6467 |
| ) | Honorable Marvin E. Aspen |
| SAM'S CLUB AND WAL-MART ) | |
| STORES d/b/a SAM'S CLUB, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is a motion for summary judgment filed by Defendant Sam's West, Inc. ("Sam's Club" or "Defendant"), seeking dismissal of Plaintiff Girtha Miller's employment claims against it. Miller alleges that Sam's Club discriminated against her on the basis of her race and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964. For the reasons set forth below, we grant the motion and terminate this case.

## FACTUAL BACKGROUND

As a preliminary note, the facts described herein are undisputed and culled primarily from Sam's Club's Local 56.1 statements of fact and exhibits. For her part, Miller did not respond to Sam's Club's statements of fact in compliance with Local Rule 56.1. *See* L.R. 56.1(b)(3) (requiring "a concise response" that includes "a response to each numbered paragraph in the moving party's statement"). She has therefore admitted each of Sam's Club's statements of fact. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Thornton v. Hamilton Sundstrand Corp.*, 54 F. Supp. 3d 929, 935–36 (N.D. Ill. 2014). In addition, Miller did not submit a statement of

any additional facts in opposition to the motion. *See* L.R. 56.1(b)(3)(C). Although Miller attached some exhibits to her response brief, most are hearsay, unauthenticated, and/or not clearly relevant. We may rely on admissible evidence only for purposes of our analysis. *See, e.g.*, *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial."). As a result, we must disregard Miller's exhibits and will discuss these exhibits only as noted below.[1] Because Miller is proceeding pro se, we will consider the factual assertions she makes in her brief to the extent that she could properly testify about the matters asserted at trial. *See* Fed. R. Evid. 602 (allowing testimony by a witness as to facts within his or her personal knowledge). With that framework in mind, we turn to the facts.

### A. Miller's Position and Disciplinary History

Miller, who is African-American, began working for Sam's Club in 2002 and most recently held the position of Competition Associate. (Def.'s SOF ¶¶ 3, 7–8.)

Under Sam's Club's Coaching for Improvement policy, associates may be disciplined through various steps, depending on the nature and severity of the offense, and can be terminated immediately for actions involving integrity, such as theft. (*Id.* ¶¶ 13–15; *see* Decl. of Bradley LeClear ¶¶ 12–17 & Ex. C (Coaching for Improvement Policy).) Although Miller contends that her performance was "exemplary" until the arrival of general manager Brad LeClear in July 2011, she offers no proof to substantiate that claim, other than her own assessment. (Resp. at 3.) The record before us indicates that Miller had received coachings prior to LeClear's arrival, which had become inactive due to the passage of time. (Def.'s SOF ¶ 17; *see* LeClear Decl. ¶ 17 & Ex. C.)

---

[1] Sam's Club also offers some of the same documentary evidence, which we will consider.

Following LeClear's arrival, and until her termination, Miller received additional coachings and guidance. On November 21, 2011, management issued Miller a written coaching for failing to change a sign for an item on the sales floor after changing the item's price. (Def.'s SOF ¶ 16; LeClear Decl. ¶ 16 & Ex. D (First Coaching #8954725).) In her opposition, Miller contends that LeClear arranged for this coaching on the same day that they disagreed about her responsibility for the store's losses due to price changing errors. (Resp. at 3–4.) Miller asserts that she had complained about LeClear's involvement in her work as Competition Associate, which angered him, and that they had argued about who was responsible for certain losses.[2] (*Id.*)

On October 12, 2012, the store's new Membership Assistant Manager, Juan Arroyo, spoke with Miller about her interactions with other associates. (Def.'s SOF ¶¶ 18–22.) Arroyo had observed Miller and another associate not getting along. (*Id.* ¶ 19; *see also* Decl. of Juan Arroyo ¶¶ 6–7 & Ex. A (10/12/12 Arroyo email to Miller).) After their conversation, Arroyo sent Miller an email reminding her to speak carefully and respectfully with all associates. (Def.'s SOF ¶ 21; Arroyo Decl., Ex. A.) At her deposition, Miller acknowledged that she had this conversation with Arroyo. (Def.'s SOF ¶ 22; Miller 7/25/14 Dep. (Def.'s SOF, Ex. 2) at 96–97.)

---

[2] Miller asserts that she complained to Catherine Walker ("Catherine") prior to this first warning, but she does not explain who Catherine is, what role she holds at Sam's Club, and when she submitted her complaint. (Resp. at 3.) Based on Miller's deposition testimony, it appears that Catherine may have been LeClear's boss. (*See* Miller 7/25/14 Dep. at 205–07.) Although Miller attaches a copy of a letter she sent to Catherine, the letter is dated March, 2013—after Miller's termination. In the letter, Miller states that she believes LeClear is micromanaging her "because [she] is black" and he is "an angry racist" with a "hidden agenda." (Resp. at 3, 17.) Miller does not explain when or how LeClear learned about the complaint to Catherine. We give little weight to the letter because of the factual gaps but credit Miller's account that she complained about LeClear around this timeframe and that he was not happy about it. (*Id.*)

Miller also attaches a letter she purportedly sent to LeClear around the same time. (Resp. at 18 (Ltr. to "Coach Brad").) That letter is undated, unsigned, and does not include a complaint of racial discrimination.

3

The following month, on November 19, 2012, Miller received a second written coaching based on an incident in which she allegedly displayed lack of respect for a manager.[3] (Def.'s SOF ¶ 23; LeClear Decl. ¶ 18 & Ex. E at 26–27 (Second Coaching, #10535321).) Assistant Manager Josh Walker reported that he had reached to review some signs that Miller was holding and that she snatched them out from his hands and then spoke rudely to him in front of other associates. (Def.'s SOF ¶ 25; LeClear Decl. ¶¶ 18–19 & Ex. E.)

Two months later, on January 22, 2013, LeClear issued Miller a third written counseling for disrespectful comments directed at a manager and another associate. (Def.'s SOF ¶¶ 27–30; LeClear Decl. ¶¶ 20–21, Ex. E–F at 28, 30 (Third Coaching, #10774768).) For example, Miller asked a manager if his weight loss had affected his attitude. She admitted that her comment could have been misconstrued as negative. (Miller 7/25/14 Dep. at 186–87.)

Using her confidential log-in information, Miller acknowledged each of these coachings in Sam's Club's system. (Def.'s SOF ¶ 24; *see* Miller 7/25/14 Dep. at 99–100; Miller 8/22/14 Dep. at 240; *see also* LeClear Decl., Exs. D–F.)

B.  **Miller's Internal Complaint of Discrimination**

Following her second write-up, Miller submitted a written complaint about her working conditions to Jennifer Jones, the market human resources manager for Sam's Club. (Def.'s SOF ¶¶ 31-32; Miller 7/25/14 Dep. at 166–67 & Ex. 26 (12/9/12 Mem.); *see* Decl. of Jennifer Jones ¶ 2.) In her December 9, 2012 letter, she described harassment from another female, African-

---

[3] Miller disputes the date of this incident and coaching. She asserts that the events took place on November 26, 2012, and not on November 19, 2012. She contends that management altered the date so that the second coaching would be within one year from her first coaching, such that both coachings would be active and progressive discipline appropriate. (Resp. at 4, 20–21; *see also* Coaching for Improvement Policy.) We find that this dispute is immaterial, however, because Miller was terminated because of the alleged theft and not because of progressive discipline based on these coachings.

4

American associate and rude treatment by a Meat Department Team Lead. (Miller 7/25/14 Dep., Ex. 26.) She also complained about her November 19, 2012 write-up from Walker, who she claimed decided to discipline her because he thought she was going to contact LeClear about the sign incident. (*Id.*; *see also* Miller 7/25/14 Dep. at 173–75.)

Because Miller reported that "only black Associates get coached," Sam's Club initiated an investigation. (Def.'s SOF ¶¶ 33–35; *see* Jones Decl. ¶ 6 (explaining that Miller had an opportunity to write a statement and to discuss her concerns with LeClear and another manager).) Miller states that Jones never contacted about her open door complaint but forwarded it to LeClear to handle. (Resp. at 5; Miller 7/25/14 Dep. at 165, 187 (stating that she and LeClear had a conversation about her complaint).) Sam's Club concluded that Miller's claims of discrimination could not be substantiated. (*Id.* ¶ 35.)

### C. Events Leading to Miller's Termination

Using merchandise from the store, Sam's Club prepares gift baskets to use as a marketing tool for potential members. (Def.'s SOF ¶ 36; Arroyo Decl. ¶¶ 8–9.)

On February 4, 2013, Walker observed Miller eating Starburst candy in the marketing office, which she then tossed into her bag.[4] (Def.'s SOF ¶ 37; LeClear Decl. ¶¶ 22–24 & Ex. G

---

[4] For her part, Miller disputes that Walker was ever in the marketing office with her that day. She also disputes that she had a purse in the store at all. (Resp. at 6.) These disputes are immaterial in light of the fact that Miller admitted to Arroyo that she took, for her own use, the opened package of candy at issue.

Relatedly, we cannot consider the statement of Aurora Marquez—submitted by Miller to support her claim that Walker was not with them in the office—because it does not comply with 28 U.S.C. § 1746. *See* 28 U.S.C. § 1746 (permitting the use of unsworn declarations if the declarant, using particular language, states "under penalty of perjury" that "the foregoing is true and correct"); *see e.g.*, *Walton v. Van Ru Credit Corp.*, 10 C 344, 2011 WL 6016232, at *6 (N.D. Ill. Dec. 2, 2011) (striking affidavits that fail to comply with the statute); *Gross v. Radioshack Corp.*, 04 C 4297, 2007 WL 917387, at *7 n.14 (N. D. Ill. Mar. 26, 2007) (rejecting a written statement because it was not signed or dated and because it was neither sworn, nor made under penalty of perjury).

5

(Walker 2/7/13 email to LeClear recounting the events).) Walker informed Arroyo about his observation and also told him the same type of candy was being used to prepare marketing gift baskets. (Def.'s SOF ¶¶ 37–38; Arroyo Decl. ¶¶ 10–11.) Walker and Arroyo then went to the marketing office and saw an open package of Starburst, with missing pieces, in what they believed was Miller's bag. (Def.'s SOF ¶ 39; Arroyo Decl. ¶ 12.) Arroyo asked Miller about the candy. (Def.'s SOF ¶ 40.) Miller explained that the candy had been open, on the desk in the marketing office, and admitted that she had eaten and taken it. (Def.'s SOF ¶ 41; Arroyo Decl. ¶ 14.) At Arroyo's request, she prepared a written statement to that effect, noting that she did not open the package and did not realize that she was violating any rules. (Arroyo Decl. ¶ 41 & Ex. B (2/4/13 Miller email to Arroyo); *see also* Miller 7/25/14 Dep. at 127–28, 141–43 (conceding that she wrote the statement and that she took the open package).)

Arroyo apprised LeClear of the situation. (Def.'s SOF ¶ 43.) LeClear gathered information, including a statement from Walker, and concluded that Miller had engaged in misconduct involving integrity. (*Id.* ¶¶ 48–49; LeClear Decl. ¶¶ 22–26 & Ex. G.) After consulting with Jones, LeClear decided that Miller's conduct warranted termination pursuant to the Coaching for Improvement Policy. (Def.s' SOF ¶¶ 50–52; LeClear Decl. ¶¶ 27–29; Jones Decl. ¶¶ 8–9.) At LeClear's instruction, Arroyo met with Miller on February 8, 2013 to terminate her employment with Sam's Club. (Def.'s SOF ¶ 52; Arroyo Decl. ¶ 16.)

Jones reported that she spoke to Miller after her termination and that Miller raised concerns about her treatment by Sam's Club. (Jones Decl. ¶¶ 10–11.) Miller contests this account and states that she never spoke to Jones after the day she was fired. (Resp. at 6.) We need not address this discrepancy because, in any event, Miller contacted Jones by email on

February 12, 2013.[5] (Jones Decl. ¶ 12 & Ex. A.) Among other things, Miller protested that LeClear had been permitted to investigate her prior complaint of discriminatory treatment. (Jones Decl., Ex. A.) According to her declaration, Jones attempted to follow-up with Miller, who did not respond to Jones' email or otherwise contact her thereafter. (Def.'s SOF ¶¶ 56–58; Jones Decl. ¶ 13 & Ex. B (2/15/13 Jones email to Miller, asking Miller to call her).)

Miller received a notice of right to sue letter from the Equal Employment Opportunity Commission on June 17, 2013 and filed this timely action on September 10, 2013. (Compl. ¶ 19.) Miller alleges racial discrimination and retaliation in violation of Title VII, and Sam's Club now seeks summary judgment in its favor on both counts.

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c).

---

[5] That being said, Miller's attachment to the February 12, 2013 email indicates that she and Jones had spoken on the evening of February 9, 2013. (Jones Decl., Ex. A (2/12/13 Miller email to Jones, forwarding a 2/9/13 statement addressed to Jones, which states: "I am sending this communique in response to our conversation this evening.").) Miller has not disputed the existence or accuracy of this document.

7

In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. We do not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## ANALYSIS

Miller may prove her Title VII race discrimination and retaliation claims under either the direct or indirect methods. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). Miller has not indicated which approach she is pursuing, so we shall address each method in turn.[6]

### A.     Direct Method

Under the direct method, Miller may show through either direct or circumstantial evidence that her "employer's decision to take the adverse job action was motivated by an impermissible purpose, such as her race." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003); *see Phelan v. Cook Cty.*, 463 F.3d 773, 779–80 (7th Cir. 2006). Direct evidence of discrimination is evidence that would show a clear acknowledgment of discriminatory intent by the employer. *See, e.g.*, *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (explaining that direct evidence is an "outright admission by the decisionmaker that the challenged action was undertaken because of the [employee's] race").

---

[6] Miller did not cite any law or challenge Sam's Clubs legal arguments in her opposition brief.

8

Nonetheless, "[d]irect proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion" and may include "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Luks v. Baxter Healthcare Corp.*, 67 F.3d 1049, 1052 (7th Cir. 2006); *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2009). Miller may succeed under the direct method by presenting circumstantial evidence that sets out a "convincing mosaic of discrimination," *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994), from which a jury may reasonably infer intentional discrimination. *Luks*, 67 F.3d at 1053 (observing that even if evidence is not a "convincingly rich mosaic . . . it is enough that the circumstances give rise to a reasonable and straightforward inference" of discrimination); *see Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011); *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903–04 (7th Cir. 2006); *Volovsek v. Wis. Dep't of Agric., Trade & Cons. Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). In *Volovsek*, the Seventh Circuit reiterated that such circumstantial evidence typically includes:

> (1) suspicious timing, ambiguous statements, behavior towards other employees and so on; (2) evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently; or (3) evidence that the employee was [adequately performing] the [job in question] and [yet was disciplined,] and the employer's reason for the difference in treatment is a pretext for discrimination.

*Id.* at 689–90 (citing *Troupe*, 20 F.3d at 736). These three forms of circumstantial evidence can be used independently or in the aggregate to "provide a basis for drawing an inference of intentional discrimination." *Troupe*, 20 F.3d at 736; *Coleman v. Donahoe*, 667 F.3d 835, 860–62 (7th Cir. 2012); *see Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009) (noting that the mosaic need not be "rich and varied" so long as "what evidence there is adds up to discriminatory intent"). With these standards in mind, we turn to Miller's claims.

1. **Racially-Motivated Discrimination**

Based on our review of the record and briefs before us, Miller has not identified any piece of direct or circumstantial evidence to support her race discrimination claim. Miller conceded that she had not heard any manager at Sam's Club make any inappropriate comments of a racial nature. (Def.'s SOF ¶ 66; Miller 8/22/14 Dep. at 251–53.) Miller testified repeatedly that she was terminated because she is black but, when pressed at her deposition, acknowledged that she had no facts to support that conclusion. (Miller 7/25/14 Dep. at 204; *see also id.* at 209 ("It's just . . . woman's intuition."); Miller 8/22/14 Dep. at 251–53, 259–60.) Indeed, when asked why she believed that her termination had anything to do with being African-American, Miller said it was "just her perception." (Miller 8/22/14 Dep. at 260.)

With respect to her discrimination claim based on her termination, Miller has not specifically pointed to any overt or ambiguous comments, suspicious timing,[7] preferential treatment of other employees, or other evidence—direct or circumstantial—supporting her claim. Miller's perceptions and suspicions, though sincerely held, simply do not constitute evidence sufficient to defeat a summary judgment motion. *See, e.g.*, *Winsley v. Cook Cty.*, 563 F.3d 598, 605 (7th Cir. 2009) (rejecting plaintiff's "bare assertions" that she had been "mistreated because of her sex" as insufficient to prevail under the direct method); *Karazanos v. Navistar Transp. Co.*, 948 F.3d 332, 337 (7th Cir. 1991); *see also Roney v. Ill. Dep't of Transp.*, 376 F. Supp. 2d 857, 864–65 (N.D. Ill. 2005) (rejecting plaintiff's claims to the extent "based on his own

---

[7] Miller contends that management issued at least two of her coachings on the heels of other disagreements with her. (*See* Resp. at 3, 7–8 & Miller Dep. Ex. 26.) For example, she claims that LeClear orchestrated her first coaching after she had complained about him and had disagreed with him. Her assertions do not support her race discrimination claim, however, because they suggest that management acted out of anger or with a retaliatory motive, but not because of racial animosity. (*See* Resp. at 3 (noting that LeClear "did not like the idea that I had the audacity to disagree" and further stating that "[e]ach coaching [she] received was pursuant to an angry manager").)

uncorroborated, speculative and conclusory testimony and statements"). As such, she cannot proceed with this claim under the direct method.

### 2. Retaliation

To prevail on a retaliation claim under the direct method, a plaintiff "must present evidence showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the two." *Argyropoulos*, 539 F.3d at 733; *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). To prove the causal link "a plaintiff must show the defendant would not have taken the adverse . . . action but for [her] protected activity." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015) (internal quotation omitted). Plaintiffs may rely on direct or circumstantial evidence to establish the causal connection, including "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Id.*; *Coleman*, 667 F.3d at 860; *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

It is not clear whether Miller bases her retaliation claim on her coachings, or exclusively on her termination. Giving her the benefit of the doubt, we will address both possibilities. (*See, e.g.*, Resp. at 7 ("Every coaching I received was retaliatory, and never intended for corrective action.").)

#### a. Coachings

Generally speaking, a written reprimand with no tangible job consequences—such as a pay cut, suspension, transfer of position, or change in responsibilities—is not a materially adverse action sufficient to sustain a retaliation claim. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647–48 (7th Cir. 2005);

11

*Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) ("[T]he employee must complain of some action on the employer's part that causes her to suffer a real harm."); *see Sweeney v. West*, 149 F.3d 550, 556–57 (7th Cir. 1998) (rejecting plaintiff's retaliation claim based on two counseling statements, neither of which disciplined her but admonished her to improve); *Azeem v. Shinseki*, 09 C 6971, 2011 WL 6819100, at *5 (N.D. Ill. Dec. 28, 2011) (finding that a letter of counseling constituted adverse action because it was "accompanied by the removal of certain job duties and the transfer to another position"). In other words, "'[e]ven under the more generous standard that governs retaliation claims,' a reprimand 'without more' is not an adverse employment action." *Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014) (quoting *Johnson*, 325 F.3d at 902)). Earlier this year, for example, the Seventh Circuit affirmed summary judgment entered against a plaintiff, noting that the several reprimands he had received over the course of three years "by themselves did not constitute materially adverse employment actions." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015).

The record indicates that Miller received three written warnings over the course of fourteen months, along with the informal admonition from Arroyo. None of these counselings resulted in any loss of pay, reduced work hours, change in title, or alteration of responsibilities. Although the written warnings evidence progressive discipline under the Sam's Club policy, Miller's termination did not stem from this progression. Miller has not articulated how these warnings, under these circumstances, could be considered adverse actions. Without more, we cannot conclude that these warnings constitute materially adverse actions sufficient to establish a retaliation claim. *Chaib*, 744 F.3d at 987; *see also Sweeney*, 149 F.3d at 557 (refusing to set precedent that might "deter[] employers from documenting performance difficulties, for fear that

they could be sued for doing so"). As a result, Miller's coachings are not actionable for purposes of her retaliation claim.[8]

### b. Termination

Nonetheless, there is no question that Miller's February 8, 2013 termination constitutes a materially adverse action. She also clearly engaged in protected activity by submitting her open door complaint to Jones on December 9, 2012, approximately two months prior to her termination.

The question before us, therefore, is whether Miller has articulated a genuine question of material fact as to the third element of her retaliation claim: causal connection. As with her discrimination claim, Miller has not identified any comments, preferential treatment of similarly-situated employees who were not terminated under like circumstances, or other evidence in support of her claim.

It is possible that Miller raises an argument based on temporal proximity. That is, she may contend that the timing of her termination—roughly eight or nine weeks after her complaint of racial discrimination—provides evidence of Sam's Club's unlawful motive. As Sam's Club points out, however, "suspicious timing alone is almost always insufficient to survive summary judgment." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011); *Burks v. Wis. Dep't Transp.*, 464 F.3d 744, 758–59 (7th Cir. 2006); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001). (Mem. at 11.) Unless the "adverse impact comes 'on the heels' of the protected activity," additional evidence beyond suspicious timing is typically necessary for a factfinder to infer retaliatory motive. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (leaving the question of intent to the jury where defendant recommended

---

[8] In light of this holding, we need not address whether Miller's complaint to Catherine about LeClear, which purportedly pre-dated her written warnings, constituted protected activity.

plaintiff's termination the day after she complained about disability discrimination); *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) (leaving the question of intent to the jury where defendant fired plaintiff on the spot as he presented a note describing alleged discriminatory treatment, and within about three weeks of his first complaint of discrimination); *see Coleman*, 667 F.3d at 860–61. Typically, such an inference is warranted only if "no more than a few days" has elapsed "between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012); *see Loving v. Lew*, 512 F. App'x 616, 619 (7th Cir. 2013). The Seventh Circuit has previously held that intervals of five weeks and seven weeks are insufficient to raise an inference of causation. *Kidwell*, 679 F.3d at 967; *Argyropoulos*, 539 F.3d at 734.

Consistent with these authorities, we find that Miller has failed to raise a question of fact necessitating trial on her retaliation claim under the direct method. The roughly two-month interval between her open door complaint and her termination is simply too long to support an independent inference of retaliation. *Argyropoulos*, 539 F.3d at 734 (holding that a seven-week interval "does not represent that rare case where suspicious timing, without more, will carry the day"); *see, e.g.*, *Pride v. Ill. Dep't of Human Servs.*, 12 C 5740, 2014 WL 2208999, at *8 (N.D. Ill. May 28, 2014). Yet Miller offers no other evidence that might bolster her claim and permit a jury to infer a causal connection between her complaint to Jones and her termination. Under these circumstances, and without additional evidence, the timing of these events is not sufficient evidence of causation for Miller to withstand summary judgment.

## B. Indirect Method

Because Miller lacks adequate evidence to defeat Sam's Club's motion under the direct method, we turn to evaluate her claims under the indirect method. To proceed at this point under

this method, which is applicable to both discrimination and retaliation claims, Miller must establish a prima facie case. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). The prima facie case requires proof that: (1) Miller is a member of a protected class; (2) her job performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) at least one similarly-situated employee not in her protected class was treated more favorably. *See Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599–600 (7th Cir. 2010); *Martino v. MCI Comm'cn Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009); *Argyropoulos*, 539 F.3d at 733; *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004). If the elements are established, discrimination is inferred and the burden of production shifts to Sam's Club to raise a legitimate, nondiscriminatory reason for the adverse action. *Naik*, 627 F.3d at 600; *Antonetti*, 563 F.3d at 591. Once a legitimate reason is offered, the inference of discrimination disappears, and Miller must establish that the offered reason is a pretext for unlawful discrimination. *Naik*, 627 F.3d at 600; *Antonetti*, 563 F.3d at 591.

Here, Miller plainly falls within a protected class for discrimination and retaliation purposes because she is African-American and she engaged in protected activity by complaining to Jones of racial discrimination. There is also no question that she suffered an adverse action when Sam's Club fired her.[9] Sam's Club contends, however, that Miller has failed to satisfy the second and fourth elements of her prima facie case under the indirect method. We briefly consider each element.

---

[9] As discussed earlier when considering Miller's retaliation claim under the indirect method, the three written warnings and the counseling by Arroyo do not rise to the level of adverse employment actions. This holding applies equally to Miller's discrimination claims, whether we evaluate them under the direct or indirect method. Because Miller's claims based on Sam's Club's discipline, short of her termination, are not actionable, we will not include them in our analysis under the indirect method.

### 1. Meeting Expectations

"When considering whether an employee is meeting an employer's legitimate expectations, this court looks to whether she was performing adequately at the time of the adverse employment action." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (citing *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993)); *Burks*, 464 F.3d at 752; *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 990–91 (N.D. Ill. 2014).

Miller contends that her performance had always been "exemplary" prior to LeClear's arrival. There are two problems with this argument. First, she offers no proof to substantiate that claim, other than her own assessment. (Resp. at 3.) It is well-established that plaintiffs cannot rely on their own vague, self-serving statements about their performance to defeat contradictory proof at summary judgment. *Sklyarsky*, 777 F.3d at 897; *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (stressing that a plaintiff's conclusory and self-serving statements as to her own abilities cannot raise a question of material fact); *see Adusumilli v. City of Chi.*, 164 F.3d 353, 363 (7th Cir. 1998).

Second, Miller's emphasis on her past performance is further irrelevant because she was terminated for stealing candy, a transgression separate and apart from her prior performance. Moreover, Miller admitted taking the candy. Although she contends that she did so innocently, Sam's Club policy states that issues involving integrity may result in termination immediately, i.e., without progressive discipline. Even if we overlook the written warnings and assume her prior "exemplary" performance, no jury could conclude that Miller was meeting Sam's Club's expectations at the time she stole the candy and was terminated. *Dear*, 578 F.3d at 610; *Burks*, 464 F.3d at 752.

Miller's failure to raise a triable question of fact as to whether she was meeting Sam's Club's expectations is fatal to her discrimination and retaliation claims. Because she cannot establish a prima facie case under the indirect method, and because she cannot proceed under the direct method, Sam's Club is entitled to summary judgment.

### 2. Similarly-Situated Comparators

Despite that conclusion, we continue with our analysis out of an abundance of caution. To satisfy the fourth element of her prima facie case under the indirect method, Miller must identify at least one similarly-situated employee—who did not complain of discrimination and/or who is not African-American—who received better treatment than she did. Coworkers are "similarly situated" if "the putative similarly situated employees were directly comparable to the plaintiff in all material respects." *Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 395 (7th Cir. 2010) (internal quotation omitted). As a matter of common sense, "this inquiry typically examines whether the individuals dealt with the same supervisor, were subject to the same standards, or engaged in similar conduct." *Larson v. Portage Twp. Sch. Corp.,* 293 F. App'x 415, 419–20 (7th Cir. 2008); *see Dear*, 578 F.3d at 610. Miller must show that she and an alleged comparator "engaged in similar conduct without such different or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Hanners v. Trent,* 674 F.3d 683, 692–93 (7th Cir. 2012) (quotations omitted); *see Burks*, 464 F.3d at 751.

In her opposition to the motion, Miller has not identified a single individual who engaged in similar conduct (theft, integrity issues) but was not terminated.[10] Although Miller reported in her open door complaint to Jones that a white male employee, named Kyle, was disrespectful to

---

[10] While not critical to our analysis, Sam's Club presented evidence that it has terminated individuals outside Miller's protected categories for similar integrity issues. (*See* Mem. at 14; Def.'s SOF ¶¶ 62–64.) Miller has not attempted to contradict or challenge this evidence, either legally or factually.

17

her and to others but was not disciplined, (Miller Dep., Ex. 26), she has not established that he qualifies as a similarly-situated employee for comparison purposes. For example, she has not described his role or provided any information about his disciplinary history. She also has not offered any evidence that he engaged in the type of conduct that lead to her termination, i.e., theft, gross misconduct, or similar behavior. Without evidentiary support for these details, we cannot conclude that Kyle is an appropriate comparator. For this additional reason, Miller has not established a prima facie case under the indirect method for either her discrimination claim or her retaliation claim.[11] In sum, Miller has failed to raise a triable question of fact on her claims against Sam's Club, using either the direct or indirect method.

## CONCLUSION

For the reasons discussed above, we grant Sam's Club's summary judgment motion in its entirety and terminate this case. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: September 22, 2015
Chicago, Illinois

---

[11] We decline to undertake the remaining steps of the *McDonnell Douglas* analysis in any detail. Suffice it to say that Sam's Club has articulated a legitimate, nondiscriminatory reason for firing Miller, i.e., her theft of candy, which it deemed conduct involving her integrity. Having evaluated Miller's evidentiary showing above, we find that she has not offered any evidence to suggest that Sam's Club's rationale is nothing more than a pretext for unlawful discrimination.